UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CVG-SAB, LLC,

        Plaintiff,

v.

FACEBOOK INC.

        Defendant.

Case No.:  2:12-cv-14521

# COMPLAINT

Plaintiff CVG-SAB, LLC, for its complaint against Defendant Facebook Inc., alleges as follows:

## INTRODUCTION

1. Plaintiff uses and owns WANT as a trademark in connection with services that allow Internet users to express their purchase intent for products and services offered on the sites of Plaintiff's customers and on Plaintiff's site. Plaintiff's WANT services are activated when Internet users click on Plaintiff's WANT Button near a desired product and/or service. By doing so, consumers create and add to a comprehensive list of their preferred products and services. Plaintiff has spent substantial time, money, and effort developing its WANT Button services and in creating, maintaining, and strengthening the source-identifying goodwill associated with its WANT Button services.

2. Just days ago, Facebook introduced a WANT Button for services that are effectively the same as, or at least closely related to, Plaintiff's WANT Button services. Facebook's unauthorized use of Plaintiff's WANT mark has already caused actual confusion in

1

the marketplace, to Plaintiff's substantial and irreparable harm. Facebook's conduct is intentional, as it had prior knowledge of Plaintiff's use of, and superior rights in, Plaintiff's WANT mark. Despite such knowledge, Facebook forged ahead in disregard of Plaintiff's trademark rights.

3. This Complaint seeks full legal and equitable redress for Facebook's violations of the Lanham Act, the Common Law of the State of Michigan, and the Michigan Consumer Protection Act.

## PARTIES

4. Plaintiff is a limited liability company organized under the laws of the state of Michigan, with a principal place of business in Farmington Hills, Michigan.

5. On information and belief, Facebook is a corporation organized under the laws of the State of Delaware, with its principal place of business in Palo Alto, California.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendant Facebook in that Facebook has engaged in, and continues to engage in, the transaction of business and in the commission of tortious acts in interstate commerce and in Michigan. Facebook's business and acts have caused, and continue to cause, injury to Plaintiff within the State of Michigan.

8. Venue is proper under 28 U.S.C. § 1391(a) and/or (b).

**PLAINTIFF'S BUSINESS AND ITS 'WANT' MARK**

9. Plaintiff is a social media company that contracts with Internet retail merchants, and does business directly with Internet users, to allow users to express their purchasing intent for products and services offered by Internet merchants. Plaintiff does business under the trade names Want Technologies, WantButton, Want, TheWantlist, and The Want List.

10. Since at least as early as September 16, 2010, Plaintiff has used WANT as a mark in connection with an electronic button that is placed on the website of Plaintiff's customers (Internet merchants) next to their products and services. Internet merchants who are interested in Plaintiff's WANT Button services can contract with Plaintiff through Plaintiff's website http://www.wantbutton.com. Upon agreeing to Plaintiff's Terms of Services, Plaintiff's customers can place Plaintiff's WANT Button on their websites for use by visitors. An example of Plaintiff's WANT Button on one of its customers' sites (Tommy Bahama) is shown below:



11.     When a visitor sees a product or service of interest, the visitor can click on Plaintiff's nearby WANT Button to indicate a preference or purchasing intent for the product or service. Every item added by clicking on Plaintiff's WANT Button can be posted to the user's profile on www.wanttt.com and on Facebook's Timeline. Thus, Plaintiff's WANT Button services allow consumers to keep a universal list of desired products and services in a central location.

12.     Plaintiff's customers include well-known companies with some of the most highly-trafficked sites on the web today, including: Tommy Bahama; Burlington Coat Factory; Sharper Image; Calico Corners; Dermstore; frederick's of Hollywood; acer; and Plow & Hearth. Screen shots of these companies' use of Plaintiff's WANT Button are collected at Exh. A.

13.     Plaintiff also operates http://www.wanttt.com, where Internet users can click on Plaintiff's WANT Button to indicate a preference or purchasing intent for products or services offered by Plaintiff's customers. A representative screen shot from Plaintiff's site is shown below:



14. Plaintiff and its customers have used Plaintiff's WANT Button as a mark continuously since the date of first use. Since Plaintiff introduced its WANT Button services, Plaintiff's WANT Button services have enjoyed substantial commercial success and exposure. For example:

   a. Over 160 million WANT Button views;

   b. Over 40 million consumer visits to merchant sites that include Plaintiff's WANT Button; and

   c. Over 28 million unique consumer visits to merchant sites that include Plaintiff's WANT Button.

15. Because of (among other things) the length of time of Plaintiff's and its customers' exclusive, continuous, and prominent use of its WANT Button, and the great number of commercial impressions of the WANT Button, Plaintiff's WANT Button service mark is a source-identifying symbol that enjoys substantial goodwill among Plaintiff's customers and Internet users. Plaintiff uses, and permits its customers to use, its WANT Button service mark as a source-indicating vehicle to distinguish Plaintiff's services from others. Such use vests in Plaintiff substantial common-law rights in its WANT Button service mark.

### PLAINTIFF'S FEDERAL TRADEMARK REGISTRATIONS AND APPLICATIONS FOR ITS 'WANT' MARK

16. Plaintiff owns two US trademark registrations for WANT, in standard characters, for use in connection with various aspects of e-commerce that directly relate to and support Plaintiff's business. The marks are registered on the Principal Register. More specifically:

   a. On September 4, 2012, the US Patent & Trademark Office issued US Trademark No. 4,200,861 (Exh. B) for WANT for use in connection with the goods and/or services listed therein, including: "managing a computer-based system that

5

enables the existence of a commercial-based on-line community of retail consumers where users can create virtual lists of desired goods and services based upon their consumer-based interests and opinions;" and "providing mobile access to on-line communities for providing and sharing consumer-based opinions and interests and for accessing the consumer-based opinions and interests of others." Plaintiff owns the Registration.

b. On February 22, 2011, the US Patent & Trademark Office issued US Trademark No. 3,923,229 (Exh. C) for WANT for use in connection with the goods and/or services listed therein. Plaintiff owns the Registration.

17. Plaintiff owns two US trademark registrations for WANT in stylized versions for use in connection with various aspects of e-commerce that directly relate to and support Plaintiff's business. The marks are registered on the Principal Register. More specifically:

a. On September 25, 2012, the US Patent & Trademark Office issued US Trademark No. 4,212,509 (Exh. D) for ▪WANT▪ for use in connection with the goods and/or services listed therein, including: "managing a computer-based system that enables the existence of a commercial-based on-line community of retail consumers where users can create virtual lists of desired goods and services based upon their consumer-based interests and opinions;" and "providing mobile access to on-line communities for providing and sharing consumer-based opinions and interests and for accessing the consumer-based opinions and interests of others.". Plaintiff owns the Registration.

  b. On March 8, 2011, the US Patent & Trademark Office issued US Trademark No. 3,928,751 (Exh. E) for [WANT logo] for use in connection with the goods and/or services listed therein. Plaintiff owns the Registration.

18.  By virtue of 15 U.S.C. §1072, Plaintiff's Registrations on the Principal Register constitute constructive notice of Plaintiff's claim of ownership of the registered marks. In addition, as will be seen below, Facebook had actual knowledge of Plaintiff's use and claim of ownership in WANT as a mark for (at least) those goods and/or services listed in Plaintiff's Registrations.

19.  Plaintiff owns three US trademark applications for WANT, in standard characters, for use in connection with various aspects of e-commerce that directly relate to and support Plaintiff's business. More specifically:

  a. Serial No. 85450500 for WANT for use in connection with the goods and/or services listed therein. The application is pending.

  b. Serial No. 85737849 for WANT for use in connection with the goods and/or services listed therein. The application is pending.

  c. Serial No. 85737835 for WANT for use in connection with the goods and/or services listed therein. The application is pending.

20.  Plaintiff owns four US trademark applications for WANT in stylized versions for use in connection with various aspects of e-commerce that directly relate to and support Plaintiff's business. More specifically:

  a. Serial No. 85737889 for [WANT logo] for use in connection with the goods and/or services listed therein. The application is pending.

b. Serial No. 85737881 for ![WANT] for use in connection with the goods and/or services listed therein. The application is pending.

c. Serial No. 85737865 for ![WANT] for use in connection with the goods and/or services listed therein. The application is pending.

d. Serial No. 85450160 for ![WANT] for use in connection with the goods and/or services listed therein. The application is pending.

### FACEBOOK'S UNAUTHORIZED USE OF 'WANT' AS A MARK FOR CLOSELY-RELATED SERVICES

21. On information and belief, on or about October 8, 2012, Facebook began using a WANT Button that users on Facebook's web site can click on to express their purchasing interest in the retailer's product or service. Upon clicking the WANT Button that is placed near the product or service of interest, the article is added to the user's Facebook wish list.

22. Examples of how Facebook, through one of its merchant customer's product feeds on Facebook (Pottery Barn), uses the WANT Button is shown below:

*(continued on next page)*

8



23. Another example of Facebook's use of its WANT Button is on Neiman Marcus' product feed on Facebook:



9

24. Other retailers through which Facebook uses a WANT Button are: Wayfair.com; Victoria's Secret, Michael Kors, Smith Optics, and Fab.com.

25. Plaintiff has not consented to, licensed, permitted, or authorized Facebook's use of the WANT Button.

26. On information and belief, Facebook adopted and uses its WANT Button to mislead and confuse consumers into believing that either: (a) by virtue of its size and market penetration, Facebook is the senior user of the WANT Button and that all others are unauthorized junior users; or (b) the services offered by Facebook under the WANT Button originate from Plaintiff, are affiliated, connected, or associated with Plaintiff, or are sponsored or approved by Plaintiff.

**FACEBOOK'S UNLAWFUL CONDUCT HAS ALREADY CAUSED ACTUAL CONFUSION**

27. Despite the fact that Facebook has only recently launched a WANT Button, there have already been instances of actual confusion in the marketplace. For example:

   a. On October 8, 2012, Plaintiff received an email from an individual who included a link to an article on huffingtonpost.com about Facebook's introduction of a WANT Button. The subject of the email was "WANT button in the news!" The author of the email wrote:

   > *I saw that the WANT button ended up in the Huffington Post today, but they're calling it Collections? Is this something different than your platform?*

   The article is at http://www.huffingtonpost.com/2012/10/08/facebook-want-button_n_1949366.html?utm_hp_ref=technology.

    b.  On October 9, 2012, Plaintiff received an email with the Subject heading "Facebook Begins Testing 'Want' Button," and a link to an article on Dailytech.com. The author asked:

> *Is this you??? If so, WOW!!*

The article is at

http://www.dailytech.com/Facebook+Begins+Testing+Want+Button/article27885.htm.

    c.  On October 9, 2012, Plaintiff received an email that included a link to an article on businessinsider.com that had come out earlier that day. The author of the email said:

> *[S]aw this come out earlier. What's the future of wantbutton.com? Looks similar to what FB just launched.*

The article is at: http://www.businessinsider.com/what-facebooks-want-button-will-look-like-2012-10.

**FACEBOOK HAS EMBARKED ON ITS UNLAWFUL CONDUCT WITH ACTUAL KNOWLEDGE OF PLAINTIFF'S USE OF, AND SUPERIOR RIGHTS IN, PLAINTIFF'S 'WANT' BUTTON**

28.    On information and belief, Facebook had actual knowledge of Plaintiff's use of, and superior rights in, Plaintiff's WANT Button services at least as early as September 2011. In that month, Facebook announced its Timeline Integration. That same month, Plaintiff promptly applied with Facebook for integration of its WANT Button services, and in the process, notified Facebook of Plaintiff's WANT Button services. Facebook approved Plaintiff's application in February 2012.

29.    Moreover, on December 8, 2011, a representative of Facebook's Legal Department contacted Plaintiff to address Plaintiff's use of Facebook's "[f]" logo near

11

Plaintiff's WANT Button services. (See Exh. F.) She wrote: "I write regarding your promotion of *your 'Want' button* using our highly recognizable F logo." (Emphasis added.) Facebook expressed its concern that Plaintiff's use of the logo made it look as if Plaintiff's WANT Button service was "an official Facebook application[] or endorsed or sponsored by Facebook." Facebook continued, "It is in both our interest that you develop your own distinctive branding." She then advised (among other things) that "you may not combine our F logo with your logo, or incorporate our logo into the lockups for *your 'want' button*." (Emphasis added.)

30. Later that day, within just hours after receiving Facebook's communication, Plaintiff explained that it used Facebook's logo in the good faith believe that the use complied with Facebook's guidelines but that the guidelines had apparently changed. Regardless, Plaintiff immediately and fully complied with Facebook's request.

31. Facebook responded favorably five days later, on December 13, 2011: "Thank you very much for your message and your prompt action to resolve this matter."

32. Therefore, at least as early as December 8, 2011, Facebook – and Facebook's Legal Department, no less – had actual knowledge of Plaintiff's then-existing use of Plaintiff's WANT Button services. Moreover, Facebook's knowledge resulted from an evaluation of the intellectual property issues raised by Plaintiff's use of Facebook's trademark.

### COUNT I:
### TRADEMARK INFRINGEMENT, IN VIOLATION OF 15 U.S.C. § 1114(1)

33. Plaintiff re-alleges and incorporates paragraphs 1 through 32 above as though fully set forth herein.

34. Facebook's unlawful conduct set forth above is likely to cause confusion (forward or reverse), to cause mistake, and/or to deceive the public, in violation of 15 U.S.C. § 1114(1).

35. Facebook's unlawful conduct set forth above in disregard of Plaintiff's superior rights has been knowing, intentional, and willful.

36. Plaintiff has suffered, and is likely to continue suffering, financial and other harm and injury, including irreparable harm and injury, if Facebook is not temporarily, preliminarily, and permanently enjoined from continuing its unlawful conduct set forth above.

## COUNT II:
### FALSE DESIGNATION OF ORIGIN, IN VIOLATION OF 15 U.S.C. § 1125(A)

37. Plaintiff re-alleges and incorporates paragraphs 1 through 36 above as though fully set forth herein.

38. Facebook has used, and is using, a false designation or origin that is likely to cause confusion, to cause mistake, and/or to deceive the relevant public as to the affiliation, connection, or association of Facebook with Plaintiff, or as to the origin, sponsorship, or approval of its WANT services by Plaintiff, in violation of 15 U.S.C. § 1125(a).

39. Facebook's unlawful conduct set forth above in disregard of Plaintiff's superior rights has been knowing, intentional, and willful.

40. Plaintiff has suffered, and is likely to continue suffering, financial and other harm and injury, including irreparable harm and injury, if Facebook is not temporarily, preliminarily, and permanently enjoined from continuing its unlawful conduct set forth above.

## COUNT III:
### COMMON LAW UNFAIR COMPETITION

41. Plaintiff re-alleges and incorporates paragraphs 1 through 40 above as though fully set forth herein.

42. Facebook has competed, and continues to compete, unfairly with Plaintiff by its unlawful conduct set forth above, in violation of Michigan common law.

43. Facebook's unlawful conduct set forth above in disregard of Plaintiff's superior rights has been knowing, intentional, and willful.

44. Plaintiff has suffered, and is likely to continue suffering, financial and other harm and injury, including irreparable harm and injury, if Facebook is not temporarily, preliminarily, and permanently enjoined from continuing its unlawful conduct set forth above.

**COUNT IV:**
**COMMON LAW TRADEMARK INFRINGEMENT**

45. Plaintiff re-alleges and incorporates paragraphs 1 through 44 above as though fully set forth herein.

46. Facebook has infringed Plaintiff's trademark rights, and continues to infringe Plaintiff's trademark rights, by its unlawful conduct set forth above, in violation of Michigan common law.

47. Facebook's unlawful conduct set forth above in disregard of Plaintiff's superior rights has been knowing, intentional, and willful.

48. Plaintiff has suffered, and is likely to continue suffering, financial and other harm and injury, including irreparable harm and injury, if Facebook is not temporarily, preliminarily, and permanently enjoined from continuing its unlawful conduct set forth above.

**COUNT V:**
**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT, MICH. COMP. LAWS § 445.903**

49. Plaintiff re-alleges and incorporates paragraphs 1 through 48 above as though fully set forth herein.

50. As a result of its unlawful actions set forth above, Facebook has violated, and continues to violate, the Michigan Consumer Protection Act by engaging in unfair and deceptive methods, acts, and practices in the conduct of trade or commerce.

51. Facebook's unfair and deceptive methods, acts, and practices have the effects of (1) causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the WANT Button services offered by Facebook; and (2) falsely representing that the WANT Button services offered by Facebook have the sponsorship or approval of Plaintiff.

52. Facebook's unlawful conduct set forth above in disregard of Plaintiff's superior rights has been knowing, intentional, and willful.

53. Plaintiff has suffered, and is likely to continue suffering, financial and other harm and injury, including irreparable harm and injury, if Facebook is not temporarily, preliminarily , and permanently enjoined from continuing its unlawful conduct set forth above.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Facebook:

A. Temporarily, preliminarily, and permanently enjoining Facebook, its officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with any of the above, from using as a mark Plaintiff's WANT Button service mark – including its WANT Button – or any variation thereof, or any other designation that is confusingly similar to Plaintiff WANT mark;

B. Temporarily, preliminarily, and permanently enjoining all entities that have contracted with Facebook to use Facebook's infringing use of WANT as a mark;

C. Directing Facebook to destroy any and all physical and electronic copies (including computer code) of the infringing WANT Button that is in Facebook's possession, custody, or control;

15

D. Directing Facebook to instruct its customers to return to Facebook any and all physical and electronic copies of the infringing WANT Button that is in its customers' possession, custody, or control for destruction by Facebook (as per C., above).

E. Awarding Plaintiff its actual damages;

F. Awarding Plaintiff the profits that Facebook has realized through its unlawful conduct;

G. Awarding Plaintiff its attorneys fees and increasing the award of Plaintiff's damages and/or Facebook's profits by virtue of the exceptional nature of this case;

H. Directing Facebook to pay all costs incurred by Plaintiff related to this proceeding; and

I. Awarding such other relief as the Court may deem just and proper.

Dated: October 12, 2012

/s/James K. Cleland
James K. Cleland (P68507)
   jcleland@brinkshofer.com
Michael N. Spink (P66527)
   mspink@brinkshofer.com
Jon Beaupré (P66389)
   jbeaupre@brinkshofer.com
BRINKS HOFER GILSON & LIONE
524 S. Main Street, Suite 200
Ann Arbor, Michigan 48104
Tel: 734-302-6000

John T. Gabrielides
   jtg@brinkshofer.com
Jeffrey Catalano
   jcatalano@brinkshofer.com
Andrew J. Avsec
   aavsec@brinkshofer.com
Danielle Cendrowski
   dcendrowski@brinkshofer.com
BRINKS HOFER GILSON & LIONE
455 N. Cityfront Plaza Drive

       Suite 3600
       Chicago, IL 60611
       Tel: 312-321-4200


       Attorneys for Plaintiff

4:12-cv-14521-GAD-DRG   Doc # 1   Filed 10/12/12   Pg 17 of 17   Pg ID 17